IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE: | CASE NO. 02-02887 ESL |
| REDONDO CONSTRUCTION CORPORATION | CHAPTER 11 |
| Debtor | |
| CONTINENTAL LORD INC. | |
| Plaintiff | |
| vs. | ADV. PROC. 22-00051 |
| REDONDO CONSTRUCTION CORPORATION; MIGUEL REDONDO BORGES; CARMEN RAFULS HERNANDEZ; CONJUGAL PARTNERSHIP COMPRISED BY MIGUEL REDONDO AND CARMEN RAFULS; JORGE REDONDO BORGES; JANE DOE; CONJUGAL PARTTNERSHIP COMPRISED BY JORGE REDONDO AND JANE DOE; CORPORATION ABC; CORPORATION XYZ; ASSURANCE COMPANY A; ASSURANCE COMPANY B. | FILED & ENTERED JUN/16/2023 |
| Defendants | |

**<u>OPINION & ORDER</u>**

The instant adversary proceeding is the court upon the *Motions to Dismiss* filed by co-defendants Jorge Redondo Borges and Redondo Construction Corp. Jorge Redondo Borges

-1-

(hereinafter, the "Defendant") the Conjugal Partnership composed by Jorge Redondo Borges[1] filed a motion to dismiss without submitting to the *in personam* jurisdiction of the Court contending that the instant Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). (dkt #49). Redondo Construction Corporation (hereinafter referred to as "Redondo" or "Defendant") filed a *Motion to Dismiss* arguing that the Complaint should be dismissed for lack of subject matter jurisdiction because it has neither "arising under" or "related to" jurisdiction. (dkt #64). Continental Lord Inc. (hereinafter referred to as "Plaintiff," "CLI" or "Lord") filed *its Opposition and Response to Motion to Dismiss filed by Jorge Redondo Borges (docket #49)* by which it contends that the Court has jurisdiction to entertain the present adversary proceeding which was filed requesting the enforcement of the Opinion and Orders entered. CLI further argues that Jorge Redondo Borges, as one of the Plan Administrators, owes fiduciary duties equivalent to a Chapter 11 trustee or Debtor in Possession. CLI also contends that its right to payment on the accrued interest on the principal amount of the pass-through claim is a final and unappealable determination which codefendant deliberately neglected in breach of the duties as an officer of the Corporation, Plan Administrator, and officer of the Court. (dkt #67). CLI filed its *Opposition and Response to Motion to Dismiss Filed by Redondo Construction (docket #64)* by which it argues that the present suit arises in connection with the interpretation and enforcement of the liquidation agreement for which the court retained core jurisdiction. CLI further alleges that this Court has subject matter jurisdiction over the controversy presented in this Complaint because it has a close nexus between the post confirmation matters addressed by Court sufficient to support and uphold jurisdiction because it concerns the interpretation, implementation, consummation, execution or administration of the confirmed plan or incorporated Liquidation Agreements. (dkt #68). Also before the Court is *Redondo's Response to Opposition to Motion to Dismiss Filed by Continental Lord* (dkt #78), and CLI's *Sur-Reply to Response to Opposition to Motion to Dismiss* (dkt #90). For the reasons stated herein, Redondo's

---

[1] The Court notes that Jorge Redondo Borges did not disclose the name of the other person that constitutes the conjugal partnership.

-2-

*Motion to Dismiss* is granted and co-defendant Jorge Redondo Borges' *Motion to Dismiss* is granted.

### Relevant Procedural Background

The travel of this case is not only extensive but convoluted and has been on-going for more than two decades. However, the Court notes that the procedural background as to CLI's pass-through claim and the treatment that this pass-through claim was afforded by the Debtor throughout the bankruptcy case and in adversary proceeding 03-00194 was thoroughly discussed in this Court's April 8, 2019, *Opinion and Order* and the January 27, 2022*, Opinion and Order* (dkt #s 2652 & 2717) in the lead bankruptcy case (02-02887). On April 8, 2019, the Court rendered an *Opinion and Order* by which it denied the *Debtor's Position as to Overpayment to Lord Under the 15% Footnote Provision of the Supplement to Plan of Reorganization at Docket No. 1017* (Lead Case No. 02-02887; dkt# 2627) and granted in part and denied in part, Lord's *Opposition to Debtor's Position as to Alleged Overpayment Under the 15% Footnote Provision* (Lead Case No. 02-02887; dkt # 2629). The Court ordered the parties to submit within thirty (30) days, their respective computations regarding how the interest component should be distributed, "[a]s per the agreement of August 15, 1994, as amended, with Continental Lord, Inc. ("CLI"), CLI is entitled to a 15% pass through from the recovery by Debtor, less proportioned expenses," pursuant to the principles of contractual interpretation premised upon articles 1233-1241 of the PR Civil Code, 31 L.P.R.A. §§3141-3479. (dkt# 2652). Consequently, on January 27, 2022, this Court granted CLI's *Motion in Compliance with Court Order* (dkt #2662) and denied Redondo's *Motion in Compliance with Court Order at Docket No. 2652* (dkt #2667).

On August 1, 2022, CLI filed the instant adversary proceeding against Redondo and Miguel Redondo Borges, Carmen Rafuls, and the conjugal partnership composed by Miguel Redondo and Carmen Rafuls and Jorge Redondo Borges and Jane Doe, and the conjugal partnership comprised of Jorge Redondo and Jane Doe. The Complaint is premised upon Redondo's and the plan administrators; namely Jorge Redondo Borges and Miguel Redondo

Borges' failure in satisfying CLI's interest payment as to its pass-through claim, as decided in this Court's January 27, 2022, *Opinion and Order*. The Complaint is premised upon the following: (i) breach of the amended confirmed plan, given that the plan specifically provided that no payment shall be made to shareholders, until all creditors have been paid; (ii) breach of the terms of the confirmed plan and fiduciary duties since the Defendants paid related companies; (iii) breach of fiduciary duties good faith covenants by paying attorney's fees and related entities which held no claims to such funds with the proceeds of the PR-52 Mayagüez Project; and (iv) collection of monies and damages. The Plaintiff alleges that the Debtor has represented that it does not have the funds to pay the interest on the pass-through claim. The Plaintiff also alleges that the Debtor and/or Plan Administrators used funds earmarked for the interest payment of the pass-through claim for other purposes, such as payment of attorneys' fees, payments to two (2) related companies; namely Desarrolladora Piloto, Inc. and Constructora Celta, Inc. which did not file proof of claims and were cancelled by the Puerto Rico Department of State in the years 2014 and 2016, respectively. The Plaintiff requests that the Court orders the Debtor and the Plan Administrators to pay Plaintiff the amount of $1,367,762.07 plus damages based upon the Plaintiff having to incur legal expenses and being deprived of financial gains over the amount of money that has now been due over twenty (20) years ago.

On December 1, 2022, co-defendant Jorge Redondo Borges and the conjugal partnership composed by Jorge Redondo Borges filed a *Motion to Dismiss* (dkt #49). On December 5, 2022, the Court ordered the Plaintiff to reply within twenty-one (21) days to the *Motion to Dismiss* (dkt #56). On December 7, 2022, co-defendants Miguel Redondo Borges, Carmen Rafuls and the conjugal partnership comprised by and between them filed their *Answer to the Complaint* (dkt #57). On December 14, 2022, Redondo filed a *Motion to Dismiss* (dkt #64). On December 27, 2022, CLI filed its *Opposition and Response to Motion to Dismiss Filed by Jorge Redondo Borges [Docket #49]* (dkt # 67). On December 28, 2022, CLI filed its *Opposition and Response to Motion to Dismiss Filed by Redondo Construction [Docket #64]* (dkt #68). On January 13, 2023, Redondo filed its *Response to Motion to Dismiss Filed by Continental Lord* (dkt#78). On January

-4-

30, 2023, CLI filed its *Sur-Reply to Response to Opposition to Motion to Dismiss* (dkt #90). On March 29, 2023, the co-defendants filed a *Joint Motion Requesting Conversion of Initial Scheduling Conference to a Status Confere*nce and the same was granted on March 30, 2023. (dkt #92 & 93).

**Position of the Parties**

*Jorge Redondo Borges*

Co-defendant Jorge Redondo contends that this adversary proceeding should be dismissed pursuant to Fed. R. Bankr P. 12(b)(1) and (b)(6) due to the following: (i) Plaintiff is trying to collect against the Defendant, a third party, moneys owed by the Debtor based upon this Court's *Opinion and Order* in the bankruptcy case, which is now final and unappealable; (ii) there are no pending matters related to the Amended Plan of Reorganization, the Litigation Trust Agreement nor the Bankruptcy estate in the bankruptcy case; (iii) Plaintiff is attempting to collect a debt "under a pre-petition agreement not contemplated, nor provided treatment for under the confirmed Amended Plan of Reorganization;" (iv) the Litigation Trust Agreement does not consider or mention the "Pass-Through" Agreement between Debtor and Plaintiff, nor between the Defendant and Plaintiff. The pass-through agreement was included in a footnote that has already been interpreted by this Court and needs no further interpretation; (v) this is a collection action from a pre-petition agreement between two parties that has continued to be a two-party dispute for the collection of interest payments owed. The principal amounts owed were paid in the year 2012, not under the confirmed Amended Plan of Reorganization but under the "Pass-Through" agreement; (vi) in Stern v. Marshall, 131 S. Ct. 2594 (2011), the United States Supreme Court held that bankruptcy court's lacked Article III jurisdiction to enter judgment on certain "non-core" proceedings, like the ones raised in Plaintiff's *Complaint*; (vii) after the entry of the Confirmation Order bankruptcy courts have limited jurisdiction to exercise its powers over a debtor and the bankruptcy estate; (viii) in Debtor's *Sur-Reply to Lord's Response at Docket No. 2728* (Lead Case No. 02-02887; dkt# 2730), the court under the confirmed Amended Plan of Reorganization retained jurisdiction for certain specified matters. However, this matter is not

included as a basis for jurisdiction as provided in the Amended Plan of Reorganization; and (ix) this alleged collection action may be litigated in other forums with jurisdiction. The bankruptcy court lacks jurisdiction and/or should abstain to maintain this bankruptcy case open for many years to come without any benefit to the Debtor or the bankruptcy estate or any other creditors. Defendant Jorge Redondo also argues that the *Complaint* should be dismissed because it fails to state a claim against the Defendant upon which relief may be granted because there was never any issue as to any monies allegedly owed by the Defendant to the Plaintiff as creditor. Plaintiff is trying to collect against the Defendant, a third party, monies owed by the Debtor based upon this Court's Opinion and Order which is now final and unappealable.

*Redondo*

Redondo contends that this Court has no jurisdiction to entertain this collection action which is the crux of the *Complaint* because it is not a claim that is "arising under" any section of the Bankruptcy Code, the Disclosure Statement, or the confirmed Amended Plan of Reorganization, as supplemented. Redondo argues that this is a post-petition claim of interest owed that will have no effect on other creditors other than CLI. This claim has no "related to" jurisdiction because it can have no effect on the administration of the bankruptcy estate and all unsecured creditors have been paid in full. Defendant further argues that this is a two-party dispute and under the case law established under the case of <u>Pacor Inc. v. Higgins</u>, 743 F. 2d 984 (3rd Cir. 1984), this adversary proceeding should be dismissed for lack of jurisdiction. Redondo also argues that, "[t]his is a claim that arises out of pre-petition work that was later subsumed in a pre-petition agreement that is now requesting distribution of interest that no other unsecured creditor received. This is not a claim under the confirmed Plan of Reorganization and has no basis in the Bankruptcy Code. Moreover, the totality of the *Complaint* fails to address how this matter is not bound under the case law of <u>Stern</u> and its progeny from dismissal." (dkt #64, pg. 9, ¶¶24 & 25).

Redondo further contends that, ".... the Motion to Dismiss is based on the fact that as of this date CLI has a collection action against the Debtor. Nothing more, there is no interpretation

of the Plan, Plan Documents or this Honorable Court's previous orders. The pass-through claim allegations and the subject surrounding those claims have already been adjudicated by this Honorable Court and CLI is attempting to continue to use this forum in order to collect on its claim against the Debtor. The alleged 'interest payments' claimed by CLI are claimed under a pre-petition contract that was amended prior to the Bankruptcy Petition and is not mentioned or discussed in the Litigation Trust Agreement. See Lead Case, Docket No. 1443. There is no basis in fact or in law to continue to exercise jurisdiction over this matter when CLI has other forums to prosecute its 'pass-through' claim." (dkt #78, pgs. 2-3, ¶¶ 7, 8 & 9). CLI filed a *Complaint* against the Debtor and other third parties not under the jurisdiction of this court as provided by the confirmed Amended Plan of Reorganization (Lead Case No. 02-02887, dkt #879, pgs. 68-69) and with causes of action that fall outside the scope of core proceedings pursuant to 28 U.S.C. §157(b)(2).

*CLI*

CLI argues that the officers of Redondo, as members of the Litigation Trust Board, were privy to the information that acknowledged the right to interest on the principal amount of CLI's pass-through claim. The Litigation Trust Ceased to exist on July 1, 2015, as a result, the Debtor's shareholders assumed the administration and the pending implementation and consummation of the amended confirmed plan (Lead Case No. 02-02887, dkt #2652, p. 5). Therefore, upon the termination of the Litigation Trust, the defendants became the plan administrators. Upon receipt of the funds awarded on account of pre-petition and post-petition interest in the three (3) adversary proceedings, the Plan administrators, i.e., Jorge Redondo and Miguel Redondo opted to distribute in May and June of the year 2016 all funds amongst the related entities; namely they distributed $4,474,118.00 to Desarrolladora Piloto, Inc., a related company of the plan administrators, which was cancelled by the Puerto Rico Department of State in the year 2014 and also distributed to Constructora Celta, Inc, another related company of the plan administrators the total amount of $4,446,497.00. Constructora Celta, Inc. did not file a proof of claim and there is no record in the

case docket of a claim transfer to such entity. Constructora Celta, Inc. was cancelled by the Puerto Rico Department of State on October 28, 2016. (dkt# Nos. 1, pp. 5-6, dkt#67, pp. 4-5). CLI contends that Jorge Redondo Borges as one of the plan administrators owes fiduciary duties equivalent to a Chapter 11 trustee or a debtor in possession which include open, honest, and straightforward disclosure to the Court and its creditors. This Court has jurisdiction to entertain the present adversary proceeding which was filed to request the enforcement of the Opinion and Orders entered and to correct the blatant and willful error in the distribution of funds awarded as interest. (dkt #67, p. 5).

Moreover, pursuant to the provisions of the amended plan of reorganization, the Debtor was obliged to pay before any distribution to the stockholders or related entities. CLI's right to payment on the accrued interest on the principal amount of the pass-through claim is a final and unappealable determination which co-defendant Jorge Redondo deliberately neglected in breach of the duties as an officer of the Debtor Corporation, Plan Administrator, and officer of the court (Lead Case 02-02887, dkt# 2717).

CLI contends that a bankruptcy court has core jurisdiction to interpret and enforce its own prior orders post-confirmation and after the case has been closed. See Huse v. Huse-Sporsem, A.S. (In re Birting Fisheries, Inc.), 300 B.R. 489 (B.A.P. 9th Cir. 2003); In re Peachtree Lane Assocs., 198 B.R. 272, 283-84 (Bankr. N.D. Ill. 1996); Travelers Indem. Co. v. Bailey, 557 U.S. 137, 129 S. Ct. 2195 (2009); Moelis & Co., LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc.), 460 B.R. 592 (Bankr. S.D.N.Y. 2011). The present adversary proceeding concerns a dispute that; (i) involves rights that were established by this Court's prior Opinion and Orders; (ii) involves the enforcement of the binding provisions of a confirmed plan, which this Court held included the principal and the interest awarded to CLI's pass-through claim; and (iii) the court retained jurisdiction to interpret a prior order pursuant to the retention of jurisdiction language included in the confirmed plan. CLI further argues that this Court has subject matter jurisdiction over the controversy presented in the instant Complaint because of the close nexus between the post confirmation matters addressed by the Court which affect the interpretation, implementation,

consummation, execution or administration of the confirmed plan or incorporated litigation agreements. See In re Sunny Land Farms Inc., 2019 Bankr. LEXIS 50; Fairfield Cmtys. v. Daleske (In re Fairfield Cmtys.), 142 F. 3d 1093 (8th Cir. 1998).

CLI argues that the Complaint as drafted contains sufficient factual matter that, accepted as true, states a claim to relief that is plausible on its face. Moreover, this Court has already found and determined Plaintiff's right to payment and the amount owed, as well as the right to payment of the accrued interest on the principal amount.

**Issues**

Plaintiff's Complaint includes four counts; namely: (i) breach of contract (amended confirmed plan); (ii) breach of fiduciary duties and good faith covenants; (iii) collection of monies action; and (iv) damages. The breach of contract claim is based upon the allegation that the defendants breached their obligations because they paid related companies contrary to the plan provisions which specified that no payment shall be made to shareholders, until all creditors are paid. The breach of contract claim is related to the breach of fiduciary duties and good faith covenants claim because the Plaintiff alleges that the defendants when they assumed the administration of the implementation and consummation of the amended confirmed plan, they owed the Plaintiff and the Court a fiduciary duty to act in good faith. The damages claim stems from the defendants' breach of their fiduciary duties and the terms of the amended confirmed plan. Plaintiff's Complaint also includes a collection of monies claim based upon this court's ruling that the Debtor owes CLI $1,367,762.07 for its respective interest award for the allocation of the principal amount of its pass-through claim. The Plaintiff requests that the Court orders the Debtor and the plan administrators to pay the Plaintiff.

The first legal issue the Court must consider is whether it has subject matter jurisdiction to enforce its previous Opinion and Orders wherein the court determined that the Debtor owed CLI $1,367,762.07 as part of its interest award. The pleadings as to the collection of monies claim are that despite the Court's ruling, neither the Debtor nor the plan administrators have paid

Plaintiff and thus, CLI requests that the Court orders the Debtor and the Defendants to pay the Plaintiff the interest amounts owed. The second legal issue is whether the court has subject matter jurisdiction to address the Plaintiff's claim that the Defendants breached the confirmed amended plan of reorganization because they paid Debtor's related entities before paying CLI's pass-through claim. The third issue is whether the court has subject matter jurisdiction to delve into claims based upon alleged breach of fiduciary duties and good faith covenants by the Debtor and the plan administrators (officers/directors of the Debtor) premised upon allegations that the defendants breached the terms of the amended confirmed plan when they made distributions to related entities before paying CLI's interest award (based on its pass-through) claim.

### Applicable Law & Analysis

Fed. R. Civ. P. 12(b)(1) and Jurisdictional Principles

This Court in Irizarry v. Irizarry (In re Betteroads Asphalt, LLC), discussed thoroughly bankruptcy subject matter jurisdiction principles within the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and stated as follows:

> Pursuant to Fed. R. Civ. P. 12(b)(1), applicable in bankruptcy adversary proceedings through Fed. R. Bankr. P. 7012, a party may request the dismissal of a complaint for "lack of subject matter jurisdiction." Fed. R. Bankr. P. 7012(b)(1). "This rule is a large umbrella, overspreading a variety of different types of challenges to subject matter jurisdiction. Some challenges—those grounded in considerations of ripeness, mootness, sovereign immunity, and the existence of federal question jurisdiction are good examples." Valentin v. Hosp. Bella Vista, 254 F. 3d 358, (1st Cir. 2001) referencing Ernst & Young v. Depositors Econ. Prot. Corp., 45 F. 3d 530, 534 (1st Cir. 1995).

> Moreover, " [i]n ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. In addition, the court may consider whatever evidence has been submitted….." Portland Pipe Line Corp., 164 F. Supp. 3d at 173-74; See also; Gonzalez v. U.S., 284 F. 3d 281, 288 (1st Cir. 2002). In view of the authority referenced above, the Court may consider the numerous exhibits attached to the complaint and motion.'" Riley v. Lexmar Global Inc. (In re Progression, Inc.), 559 B.R. 8, 10-11(Bankr. D. Mass. 2016).

"Lack of subject matter jurisdiction may be raised at any time. Indeed, even if the litigants do not identify a potential problem in that respect, it is the duty of the court—at any level of the proceedings—to address the issue *sua sponte* whenever it is perceived." 2 Moore's Federal Practice - Civil § 12.30 (2021); See also Fed. R. Civ. P. 12(h)(3) applicable in bankruptcy proceedings through Fed. R. Bankr. P. 7012(b); In re Recticel Foam Corp., 859 F. 2d 1000, 1002 (1st Cir. 1988) ("a court has an obligation to inquire *sua sponte* into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting"); Goldsmith v. Massad (In re Fiorillo), 494 B.R. 119, 142 (Bankr. D. Mass. 2013) (bankruptcy courts are "obligated to determine whether and to what extent [they] have jurisdiction to hear and determine all counts of the complaints"); Feliciano v. Dubois, 846 F. Supp. 1033, 1041 (D. Mass. 1994) ("a court always had an obligation to consider, even on its own initiative as well as on motion of an opposing party, whether it has subject matter jurisdiction").

The jurisdiction of the bankruptcy courts is grounded in, and limited by, statute. See Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed. 2d 403 (1995). "Subsections 1334(a), (b) and (e) of title 28, United States Code, establish the jurisdiction of the federal district courts over title 11 cases, over civil proceedings that take place under the umbrella of a title 11 case and over property of the title 11 estate, respectively." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[1] (16th ed. 2021). 28 U.S.C. §1334, provides that the district courts have jurisdiction over two main categories of bankruptcy matters, namely; "cases under title 11," over which the district court has original and exclusive jurisdiction and "proceedings arising under title 11, or arising in or related to cases under title 11," over which the district court has original, but not exclusive jurisdiction.  28 U.S.C. §1334(a) & (b). See Middlesex Power Equip. & Marine v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.), 292 F. 3d 61, 66 (1st Cir. 2002); Gupta v. Quincy Med. Ctr., 858 F. 3d 657, 661 (1st Cir. 2017). "'Cases'" under title 11 are to be distinguished from civil proceedings arising under title 11 or civil proceedings related to or arising in title 11 cases. 'Cases' are the subject of section 1334(a), while 'civil proceedings' are covered by section 1334(b). The introductory phrase of section 1334(a), 'Except as provided in subsection (b) of this section', introduces the concept that the jurisdiction of the district courts over title 11 'cases' is original and exclusive, while the jurisdiction over civil proceedings arising under title 11, or arising in title 11 cases, or related to those cases, is original but not exclusive." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[2] (16th ed. 2021).

28 U.S.C. §157(a) provides that, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."[2] "This broad jurisdictional grant allows the bankruptcy courts to 'deal efficiently and expeditiously with all matters connected with the bankruptcy estate.'" Celotex Corp. v. Edwards, 514 U.S. at 308 (citing Pacor, Inc. v. Higgins, 743 F. 2d 984, 994 (3rd Cir. 1984)). The demarcations between these types of proceedings are not always easy to distinguish from each other. See In re Middlesex Power Equip. & Marine, Inc., 292 F. 3d at 68 ("[t]he dividing line is

---

[2] In the United States District Court for the District of Puerto Rico, bankruptcy cases are referred automatically to the bankruptcy court pursuant to the Court's General Order of July 19, 1984. Juan Torruella, Resolution (July 19, 1984).

unclear between proceedings that 'arise under' as opposed to 'arise in' and as opposed to 'related to' title 11. The statute itself provides no definitions."). See also; Wood v. Wood (In re Wood), 825 F. 2d 90, 96 (5th Cir. 1987); Tamko Roofing Prods., Inc. v. Ideal Roofing Co., 282 F. 3d 23, 32 (1st Cir. 2002). "Section 157 also divides bankruptcy proceedings into two further categories: "core" and "non-core." Stern v. Marshall, 564 U.S. 462, 473-76, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011). These categories determine '[t]he manner in which a bankruptcy judge may act on a referred matter." Id. at 473. Proceedings 'arising under title 11, or arising in a case under title 11,' are both considered 'core proceedings' in which the bankruptcy court may enter final orders and judgments. Id. at 474 (citing 28 U.S.C. § 157(b)). Proceedings merely 'related to' a case under title 11 are considered 'non-core' proceedings. Stern, 564 U.S. at 477 (citing Collier on Bankruptcy ¶ 3.02[2], p. 3-26, n.5 (16th ed. 2010) ('The terms 'non-core' and 'related' are synonymous.'). Although whether a bankruptcy proceeding is a core proceeding is analytically separate from whether there is jurisdiction, 'by definition all core proceedings are within the bankruptcy court's jurisdiction.' Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 n.6 (11th Cir. 1999) (citing 28 U.S.C. §§ 157(b)(1), 1334(b))." Gupta v. Quincy Med. Ctr., 858 F. 3d. at 662, fn 5; See also, Roy v. Canadian Pac. Ry. Co. (In re Lac-Mégantic Trail Derailment Litig.), 999 F. 3d 72, 79, fn. 4 (1st Cir. 2021).

Bankruptcy proceedings "arising under" title 11 are those in which the Bankruptcy Code itself creates a statutory cause of action. Gupta v. Quincy Med. Ctr., 858 F. 3d at 662 (citing Stoe v. Flaherty, 436 F. 3d 209, 217 (3rd Cir. 2006)(noting that 'arising under' jurisdiction is limited to proceedings where "the Bankruptcy Code creates the cause of action or provides the substantive right invoked"); In re Wood, 825 F. 2d at 96 ("Congress used the phrase 'arising under title 11' to describe those proceedings that involve a cause of action created or determined by a statutory provision of title 11")). "Courts have held that civil proceedings "arising under title 11" include causes of action to recover fraudulent transfers, avoidance actions brought under section 544(b) of the Bankruptcy Code, actions to recover postpetition transfers under section 549 and actions against general partners under section 723." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[3][e][i] (16th ed. 2021). Other civil proceedings that arise particularly under title 11 and are classified as administrative matters or contested matters under Fed. R. Bankr. P. 9014 include the following controversies: "…whether to appoint or elect a trustee under chapter 11, motions to obtain financing with priority over existing liens, confirmation of a plan under chapters 9, 11, 12 or 13, sales free and clear of liens, complaints objecting to the discharge of a debtor and the payment of post confirmation fees to the United States trustee in chapter 11 cases." Id. at ¶3.01[3][e][i].

Proceedings "arising in" cases under title 11 are "those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." In re Middlesex Power Equip. & Marine, Inc., 292 F.3d at 68; see also; Gupta v. Quincy Med. Ctr., 858 F. 3d at 663 (citing Stoe v. Flaherty, 436 F. 3d at 218 ("[C]laims that 'arise in' a bankruptcy case are claims that by their nature, not their particular factual circumstance, could only arise in the context of a bankruptcy case."); Continental Nat'l Bank v. Sanchez (In re Toledo), 170 F.3d 1340, 1345 (11th Cir. 1999) (stating that proceedings "arising in" bankruptcy are "matters that could arise only in bankruptcy")). "There is no 'but for' test for arising in jurisdiction; that is, the fact that a matter would not

-12-

have arisen had there not been a bankruptcy case does not *ipso facto* mean that the proceeding qualifies as an "arising in" proceeding." Id. at ¶3.01[3][e][iv].

"'Arising in' acts as the residual category of civil proceedings, and includes such things as administrative matters, "orders to turn over property of the estate" and "determinations of the validity, extent, or priority of liens."  'Arising in' proceedings might also include contempt matters, motions to appoint an additional committee under section 1102, and motions to appoint or elect trustees or appoint examiners under section 1104. An action to recover a postpetition account 'arises in the bankruptcy case,' as does an action challenging certain activities connected with an auction of estate property, and an action for legal malpractice that arose postpetition, even one that belongs to the debtor and not to the estate." Id. at ¶3.01[3][e][iv].

"This category is also illustrated by such things as allowance and disallowance of claims, orders in respect of obtaining credit, determining the dischargeability of debts, discharges, confirmation of plans and like matters. In none of these instances is there a "cause of action" created by statute, nor could any of the matters illustrated have been the subject of a lawsuit absent the filing of a bankruptcy case." Id. at ¶3.01[3][e][iv].

"By far the largest number of reported cases dealing with bankruptcy jurisdiction over civil proceedings are concerned with whether a particular proceeding is "related to" a title 11 case. These cases are of two kinds. The first concerns whether, at one extreme, although a particular civil proceeding is definitely within bankruptcy jurisdiction, it is "core" or "related"; the second concerns whether, at the other extreme, a civil proceeding is "related" or is not within the bankruptcy jurisdiction granted by section 1334(b) at all." Id. at ¶3.01[3][e][ii].

------------

"Hence, an action is 'related to' bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." In Pacor, Inc. v. Higgins, 743 F.2d at 994.

"Civil proceedings encompassed by section 1334(b)'s "related proceedings," that is, those whose outcome could conceivably have an effect on the bankruptcy estate fall into two main categories: (1) those that involve causes of action owned by the debtor that became property of a title 11estate under section 541 (as distinguished from postpetition causes of action, i.e., those that come into existence during the pendency of the bankruptcy case); and (2) those that are suits between third parties that "in the absence of bankruptcy, could have been brought in a district  court or a state court." Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.01[3][e][i] (16th ed. 2021)."

In re Betteroads Asphalt, LLC, 2021 Bankr. LEXIS 3081, *31-39; 2021 WL5182431

(Bankr. D.P.R. 2021).

*__Analysis__*

On April 8, 2019, and January 27, 2022, the Court rendered two *Opinion and Orders* in the lead case.[3] The April 8, 2019, *Opinion and Order* dealt with various motions before it. In said Opinion, the Court denied Debtor's *Renewed Objection to Reopening the Case Upon Recent Arguments presented by Lord at Dkt. No. 2645*. The Court also denied *Debtor's position as to Overpayment to Lord under the 15% Footnote Provision of the Supplement to Plan of Reorganization at Docket No. 1017* (Lead Case, dkt #2627) and granted in part and denied in part, CLI's *Opposition to Debtor's Position as to Alleged Overpayment Under the 15% Footnote Provision* (Lead Case, dkt #2629).

The Court's reasoning in denying the Debtor's renewed objection to the reopening of the case and determining that it had jurisdiction to ascertain whether the Debtor had to pay the accrued interest in the amount of $1,336,799.04 (Lead Case, dkt #2559) was as follows:

"[t]he court reaffirms its prior holding (Docket No. 2582[4]) to reopen this case pursuant to section 350(b) for 'other cause,' based upon the interpretation of the binding provisions of the confirmed plan, as supplemented (Docket Nos. 1016, 1017 and 1018), under the particular circumstances of the case and also the Debtor's contention regarding the subcontractor claims in adversary proceeding No. 03-00194. In retrospect, maybe a final decree should not have been entered on August 29, 2008, when there was substantial ongoing litigation in adversary proceeding number 03-00192, 03-00194 and 03-00195.

The court finds that it is important and relevant to disclose the origins of how 'footnote 1' pertaining to Exhibit B (Estate's Claims and Causes of Actions) came into existence. The Debtor in the Supplement to First Amended Disclosure Statement disclosed that Exhibit C (a list of the proof of claims filed against the Debtor), in the row marked Claim No. 139 (Continental Lord), deleted the number '$131,273.00' in the column labeled 'Amount expected to be allowed,' and replaced it with '$157,509.15' (Docket No. 1016). The Debtor in its *Supplement to First Amended Plan of Reorganization* disclosed that: '1. The

---

[3] The Court may take judicial notice of its docket. See LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999), cert denied, 530 U.S. 1230, 120 S. Ct. 2661, 147 L. Ed. 2d 275 (2000).

[4] On January 18, 2017, the Court ordered as follows: "1-[f]or the reasons stated in open court, the motion to reopen filed by Continental Lord, Inc. (Dkt. #2559) is hereby granted. The same is based on interpreting the binding terms of the confirmed plan as they relate to the payment of amounts owed to Continental. The court notes that substantial litigation has occurred since the entry of the final decree on August 29, 2008 (#1965). 2- Continental Lord, Inc. shall file within 21 days an explicative motion as to how it calculated that the amount of $1,336,779 is owed. 3- The debtor shall file a motion within 21 days detailing how the amount of $9,923,567.43 was distributed by the debtor (re AP No. 03-00192, 03-00194 and 03-00195)." (Lead Case, dkt #2582).

-14-

amendments to the Plan, as indicated in boldface, are attached hereto as Exhibit A. 2. The amendment to Item No. 3 (Estate's Claims and Causes of Actions) of the 'Schedule of Plan Documents' annexed to the Plan is attached hereto as Exhibit B' (Docket No. 1017 as compared to Docket No. 879, pg. 171, Estate's Claims and Causes of Action in which there were no footnotes). The Debtor on February 17, 2005, filed *a Motion in Compliance with Order and Certificate of Mailing* stating that: 'Debtor has amended the Plan in accordance with the Joint Motion, and both the Plan and Exhibit C of the Disclosure Statement in response to issues raised by Continental Lord, Inc. concerning its claim, as specifically set forth in the Supplements filed contemporaneously herewith, which are being served together as indicated in the certificate of service to this motion' (Docket No. 1018, p. 1).

The Debtor's confirmed plan, Article XI, section 1.1 Retention of Jurisdiction provides in pertinent part that after the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction pursuant to 11 U.S.C. §§105(a) and 1142 to: (e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, including but not limited to the Litigation Trust Agreement; (f) to enforce the provisions of the Plan subject to the terms thereof; and (g) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan (Docket Nos. 879, pgs. 68-69). Moreover, the Debtor made a particular request for retention of jurisdiction over specified matters as stated in Article XI of the first amended plan of reorganization which the court granted on October 5, 2005 (Docket No. 1207). Therefore, the court has jurisdiction to consider the pending issues regarding the Liquidating Agreement."

In re Redondo Construction Corp., 2019 Bankr. LEXIS 1162, *46-49, 2019 WL 1549726 (Bankr. D.P.R. 2019).

In its *Opinion and Order*, the Court also found that:

"[t]he Debtor was aware of the nature of Lord's pass-through claim. The Debtor on February 17, 2005 (Docket No. 1017) filed its *Supplement to First Amended Plan of Reorganization* in which it specifically disclosed that one of the amendments was to Item No. 3 which is the Estate's Claims and Causes of Actions (Exhibit B) of the Schedule of Plan Documents annexed to the Plan. The amendment to Exhibit B consisted of 2 footnotes, footnote 1 being the subject of this convoluted controversy. This court finds that the supplement to the First Amended Plan of Reorganization which resulted in the inclusion of 'footnote 1' to the Estate's Claims and Causes of Actions is a binding provision of a confirmed plan and the parties involved have for over a decade, since before the date the plan was confirmed on October 6, 2005, consistently treated this claim as a pass-through claim in conformity with the purpose of a Liquidating Agreement and the ensuing litigation, as explained above."

Id. at *65-66.

After undergoing a thorough analysis, the Court also concluded that the doctrine of judicial estoppel applied in the instant case as to the validity and the amounts distributed for the subcontractor pass-through claims. The Court concluded that:

> "After conducting a thorough analysis of Redondo's position regarding the subcontractor pass-through claims of Lord and Remodelco, which it initially brought forth in its complaint and then further explained in its post-trial memorandum and resulted in one of the legal issues which was discussed in three (3) Opinions and Orders, this court finds that the doctrine of judicial estoppel applies to the Debtor in the instant case regarding the validity and the amounts distributed for the subcontractor pass-through claims. See also (Adv. Proc. 03-00194, Docket No. 268, pg. 20). Redondo's position as to the subcontractor pass-through claims had been consistently evident from the onset of the complaint in the adversary proceeding until the First Circuit's determination that Redondo had standing to assert the subcontractor claims because the PRHTA failed to timely present its Severin-based affirmative defense, therefore waiving the same. It is evident that Redondo's standing to assert the subcontractor claims was a contested legal issue, meaning that Redondo presented its position regarding these subcontractor claims and had to persuade several courts to accept the same.

> The judicial estoppel doctrine applies to Redondo because its new position regarding the subcontractor claims is inconsistent with its prior position as evinced in the extensive and convoluted travel of this adversary proceeding. Moreover, Redondo would derive an unfair monetary advantage if this new position is accepted by the court, thirteen (13) years after filing the complaint in the adversary proceeding and four (4) years after the disbursement of the principal payment of the subcontractor claims from the date of the motion to reopen on June 28, 2016 (Docket No. 2559)."

Id. at *95-97.

Consequently, the Court, after a thorough analysis, reaffirmed its prior holding to re-open the bankruptcy case and consider the pending issues as to the pass-through claims based upon the interpretation of the binding provisions of the confirmed plan, as supplemented, and the Debtor's contention regarding the subcontractor claims in adversary proceeding No. 03-00194 in conjunction with the Retention of Jurisdiction provisions of the Debtor's amended confirmed plan. The Court determined that there had been no overpayment in the amount of the principal claim that had been awarded and paid to CLI based on the amended Liquidating Agreement, the Bankruptcy Court's 2009 Opinion and Orders and Judgment. The Court notes that the legal issue of the prejudgment and post-judgment interest pertaining to the principal amounts of the claims

-16-

was extensively litigated until it was finally resolved on April 21, 2016. The Court held that both CLI and Remodelco were entitled to their respective interest awards for the allocation of the principal amount of their pass-through claims (sub-contractor claims). However, the Court concluded that the parties had not placed it in a position to be able to determine the specific amount the interest award component should be for the pass-through claims and ordered the parties to, "… to submit to the court within thirty (30) days; their respective computations regarding how the interest component should be distributed, '[a]s per the agreement of August 15, 1994, as amended, with Continental Lord, Inc. ("CLI"), CLI is entitled to a 15% pass through from the recovery by the Debtor, less proportioned expenses,' pursuant to the principles of contractual interpretation premised upon articles 1233-1241 of the PR Civil Code, 31 L.P.R.A. §§3141-3479." Id. at 132.

The bankruptcy court's April 8, 2019, *Opinion and Order* was appealed to the U.S. District Court for the District of Puerto Rico and on September 30, 2020, the district court affirmed the April 8, 2019, Opinion and Order and a *Judgment* was entered affirming the Bankruptcy Court's rulings subject of this appeal. (Lead case, dkt #s 2695 & 2696).

Thereafter, the Court in its January 27, 2022, *Opinion and Order* concluded the following as to the interest amount allocated to CLI:

"[t]he court agrees with CLI that for more that twelve (12) years the Debtor pursued Lord's pass through claim, paid on July 16, 2012, the principal amount awarded of such claim under the Plan following the provisions of the Liquidating Agreement, as amended in March 2001, regarding payment of the claim based on the specific allocation of the same which was in conformity with the first paragraph of the 2001 amendment. (Docket No. 2652, pg. 10). The court also adopts CLI's legal analysis regarding Lord's net interest allocation and agrees with CLI that the percentage that was allocated to Lord was 18.94% and that the interest allocated to Lord should be 18.94% of the total amount of $8,833,134.62 which results in $1,672,995.70 minus 10% legal fees ($167,299.57) and $137,934.06 in administrative expenses resulting in the net interest amount due to CLI of $1,367,762.07. The court notes that the Debtor in its Motion in Compliance with Order at Docket No. 2652 failed to provide any legal basis for CLI's interest computation (Docket No. 2667). Therefore, CLI's legal analysis for its interest component stands."

In re Redondo Construction Corp., 2022 Bankr. LEXIS 217, *25; 2022 WL 256775 (Bankr. D.P.R. 2022)

### Application of the Jurisdictional Principles

*Enforcement of bankruptcy court's prior orders*

The court will first address whether it has subject matter jurisdiction to entertain CLI's collection of monies claim which is premised upon the Debtor's officers' refusal to comply with this court's Opinion and Order as to the interest amounts owed to CLI and its request for the payment of monies owed. CLI argues that a bankruptcy court has jurisdiction to enforce its previous orders.

The enforcement or construction of a bankruptcy court order is a proceeding that falls within the court's jurisdiction. Bankruptcy courts like all federal courts may retain jurisdiction to interpret and enforce their prior orders. See Travelers Indem. Co, v. Bailey, 557 U.S. 137, 151, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009) (noting that bankruptcy courts "plainly ha[ve] jurisdiction to interpret and enforce its own prior orders"); See also; Gupta v. Quincy Med. Ctr., 858 F. 3d 657, 663 (1st Cir. 2017); Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 419 F.3d 83, 96 (2d Cir. 2005) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." (quoting Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail Inc., 304 F.3d 223, 230 (2d Cir. 2002)).

At this juncture, the court will discuss the Supreme Court's decision in Travelers Indem. Co. v. Bailey. In Travelers, the Supreme Court indicated that bankruptcy courts are entitled to substantial deference in the interpretation of their own orders. The bankruptcy court in Travelers issued an "Insurance Settlement Order" enjoining potential claimants from bringing suits against Travelers Indemnity Co. ("Travelers"), and other of the Debtor's insurers, for "any and all claims, demands, allegations, duties, liabilities and obligations… which have been or could have been, or

-18-

might be, asserted… against [insurers] based upon, arising out of or relating to any or all of the Policies." Travelers, 557 U.S. 137, 141 (2009). The Insurance Settlement Order was incorporated into the Confirmation Order, collectively the "1986 Orders." Id at 142. More than a decade after confirmation, a number of claims were made directly against Travelers. Id at 142. Travelers sought declaratory relief from the bankruptcy court under the 1986 Orders, and the bankruptcy court concluded that the claims against Travelers were barred by the 1986 Orders. Id at 145. On review, the Supreme Court held that the bankruptcy court had continuing jurisdiction to interpret its own orders and agreed with its interpretation, finding the terms of the 1986 Orders unambiguous and noting "that a court should enforce a court order, a public governmental act, according to its unambiguous terms." Id. at 150-151. The Supreme Court also observed that, even if the 1986 Orders were found to be ambiguous as applied to the [claims at issue], and even if we concluded that it would be proper to look to the parties' communications to resolve that ambiguity, it is far from clear that respondents would be entitled to upset the Bankruptcy Court's interpretation of the 1986 Orders. Numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference. . . . Because the 1986 Orders clearly cover the [claims], we need not determine the proper standard of review. Id. at 151, fn. 4. In Travelers, the Supreme Court described a two-step process for the review of a bankruptcy court's interpretation of its own order which consists of the following: (i) if the bankruptcy court's order is unambiguous, the plain meaning must be given effect; and (ii) if the reviewing court finds that the order is ambiguous, that court must undertake an addition step of review, giving the bankruptcy court's interpretation substantial deference. See First Marblehead Corp. v. Educ. Res. Inst., Inc., 463 B.R. 151, 157-158 (D. Mass. 2011).

-19-

In the instant case, the court retained post-confirmation jurisdiction to interpret the binding provisions of the amended confirmed plan as supplemented and the Debtor's contention regarding the subcontractor claims in adversary proceeding No. 03-00194, which resulted in the two Opinions and Orders referenced herein. The amended plan, as supplemented, was confirmed on October 6, 2005 (Lead case 02-02887, dkt #1209). A proceeding to execute/enforce a collection of monies claim premised upon the Debtor's (and the Debtor's officers) noncompliance with this Court's Opinions and Orders is best brought via a different procedural vehicle such as a motion for contempt[5]. A motion for contempt to enforce a Court Order pursuant to Fed. R. Civ. P. 9014 & 9020 and 11 U.S.C. §§105(a) 1141, 1142 is not before the consideration of the court. The Court also notes that there is no money judgment as to the interest amounts owed by the Debtor, thus a writ of execution under Fed. R. Civ. P. 69 is not a proper procedural request/remedy. Therefore, the court finds that CLI's arguments as to the Court's enforcement of its own prior orders is misplaced.

### *Postconfirmation "related to" jurisdiction and the close nexus standard*

In a post-confirmation setting, unless the plan provides differently, the property of the bankruptcy estate vests in the reorganized debtor pursuant to 11 U.S.C. §1141(b)[6] and the bankruptcy estate ceases to exist. Therefore, the outcome of a post-confirmation proceeding cannot affect the bankruptcy estate. See Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.) 372 F. 3d 154, 165 (B.A.P. 3rd Cir. 2004). Since the bankruptcy estate ceases to exist once confirmation has occurred, the Court of Appeals for the Third Circuit in In re Resorts Int'l

---

[5] The Court notes that Fed. R. Civ. P. 9020 does not address a court *sua sponte* initiating a contempt proceeding. See Alan N. Resnik & Henry J. Sommer, 10 Collier on Bankruptcy, ¶9020.03 (16th ed. 2023) ("The Advisory Committee Note to the 2001 amendment states that '[t]his rule, as amended, does not address a contempt proceeding initiated by the court *sua sponte*.' 2001 Advisory Committee Note to Fed. R Bankr. P. 9020, *reprinted in* App. 9020[4] *infra*."

[6] 11 U.S.C. §1141(b) provides: "[e]xcept as provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

Inc. modified its pre-confirmation Pacor test for post-confirmation "related to" jurisdiction which resulted in the close nexus test which is discussed below (infra). See Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.02[7] (16th ed. 2022) ("[t]he problem that the court found with this statement of the rule, and why retention provisions are 'problematic,' is that 'the debtor's estate ceases to exist once confirmation has occurred. Thus, a modified statement of the Pacor rule was called for").

Retention of jurisdiction provisions included in a plan will be given effect if there is subject matter jurisdiction pursuant to 28 U.S.C. §§1334 and 157. "But neither the bankruptcy court nor the parties can write down their own jurisdictional ticket. Subject matter jurisdiction 'cannot be conferred by consent.'" In re Resorts Int'l, Inc. 372 F. 3d at 161 (quoting Coffin v. Malvern Fed. Sav. Bank, 90 F. 3d 851, 854 (3d Cir. 1996)); See also Gupta v. Quincy Med. Ctr., 858 F. 3d 657, 663 (1st Cir. 2017) ("[a] retention of jurisdiction provision may not alter the fact that 'the source of the bankruptcy court's subject matter jurisdiction is neither the Bankruptcy Code nor the express terms of the Plan. The source of the bankruptcy court's jurisdiction is 28 U.S.C. §§1334 and 157'" (citations omitted)). Moreover, section 1142[7] is generally considered as part of the post-confirmation jurisdictional analysis regarding matters concerning the implementation or execution of a confirmed plan.

Post-confirmation related to jurisdiction generally applies a modified version of the Pacor test in a post-confirmation scenario in conjunction with the retention of jurisdiction provisions contained in the plan of reorganization. See Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.02[7] (16th ed. 2022). These proceedings apply only in the chapter 11 context and generally entail some provision or aspect of the plan such as its meaning, implementation, or its consummation to be considered within the court's post-confirmation related to jurisdiction. See

---

[7] 11 U.S.C. §1142 provides: "(a) [n]otwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court. (b) The court may direct the debtor and any other necessary party to execute or deliver or to join the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan."

Wellesley Realty Assocs., LLC v. Town of Wellesley (In re Wellesley Realty Assocs., LLC), 2015 Bankr. LEXIS 1620. *45-46, (Bankr. D. Mass 2015) (quoting In re General Media, 335 B.R. 66, 75 (Bankr. S.D.N.Y. 2005). After substantial consummation has occurred pursuant to 11 U.S.C. §1101(2), the bankruptcy court's jurisdiction is reduced because many of the plan provisions will have already been effectuated. See Gray v. Polar Molecular Corp. (In re Polar Molecular Corp.), 195 B.R. 548, 555 (Bankr. D. Mass. 1996) ("[a]s the terms of a plan of reorganization are fulfilled, there are necessarily fewer plan issues which might arise. At the point of substantial consummation, many of a plan's provisions will have been carried out. For this reason, simple logic dictates that at this stage in a reorganization the bankruptcy court's post-confirmation jurisdiction is reduced").

The issue of post-confirmation "related to" jurisdiction of a chapter 11 plan has resulted in circuit splits and three (3) different jurisdictional analyses, namely: (i) the close nexus test; (ii) the factor analysis test which has been recently modified; and (iii) the close nexus test with the requirement of retention. See Timothy A. Davis, *Comment: Defining the Close Nexus: An Analysis of a Bankruptcy Court's Chapter 11 Postconfirmation Jurisdiction*, 28 Emory Bankr. Dev. J. 419, 439 (2012).

The Third Circuit's close nexus test has the most persuasive opinion and is the most widely adopted test for defining and analyzing post-confirmation "related to" jurisdiction. See Timothy A. Davis, *Comment: Defining the Close Nexus: An Analysis of a Bankruptcy Court's Chapter 11 Postconfirmation Jurisdiction*, 28 Emory Bankr. Dev. J. 419, 440 (2012); Alan N. Resnik & Henry J. Sommer, 1 Collier on Bankruptcy, ¶3.02[7] (16th ed. 2022); See also; Montana v. Goldin (In re Pegasus Gold Corp.), 394 F. 3d 1189 (9th Cir 2005); Fla. Dev. Assocs. v. Knezevich & Assocs. (In re Fla. Dev. Assocs.), 2009 Bankr. LEXIS 342 (Bankr. S.D. Fla. 2009); Cal. Franchise Tax Bd.v. Wilshire Courtyard (In re Wilshire Courtyard), 459 B.R. 416 (B.A.P. 9th Cir. 2011). The close nexus test is defined as, "… where there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust

-22-

agreement, retention of post-confirmation." In re Resorts Int'l, Inc., 372 F. 3d at 168-169. The close nexus test applies the broadest analysis of post-confirmation "related to" jurisdiction compared to the other two tests.

The Fifth Circuit in Newby v. Enron Corp. (In re Enron Corp. Secs.), 535 F. 3d 325, 335-336 (5th Cir. 2008) clarified its holding in Bank of La. v. Craig's Stores of Tex. (In re Craig's Stores of Tex.), 266 F.3d 388 (5th Cir. 2001) and adopted a three (3) factor analysis for determining post-confirmation jurisdiction. The three-factor analysis consists of the following: (i) whether the claim at issue principally deals with post-confirmation relations between the parties or instead arose from pre-confirmation conduct; (ii) whether there was antagonism between the parties as of the date of the reorganization (i.e., as of the date of the plan confirmation hearing); and (iii) whether there are any facts or law deriving from the reorganization of the plan that are necessary to the claim. The Fifth Circuit's three-factor test is viewed as being a narrower approach to post-confirmation jurisdiction than the close nexus test because it focuses more on whether there is a significant relationship between the post-bankruptcy controversy and the adjudication of the bankruptcy case. The close nexus test allows bankruptcy courts to consider the overall effect of the claim on the bankruptcy case as opposed to being circumscribed by specific factors. See Timothy A. Davis, *Comment: Defining the Close Nexus: An Analysis of a Bankruptcy Court's Chapter 11 Postconfirmation Jurisdiction*, 28 Emory Bankr. Dev. J. 419, 452 (2012).  Notwithstanding, recently the Fifth Circuit in Natixis Funding Corp. v. Genon Mid-Atlantic, L.L.C. (In re Genon Mid-Atlantic Dev., L.L.C.), 42 F.4th 523, 535 (5th Cir. 2022), revised its prior post-confirmation jurisdiction standard devised in In re Enron Corp. Secs., and held that:

"[t]hose factors are a useful heuristic, but only the ***Enron*** court has applied them. The rest of our decisions instead ask *Craig's* overarching question: Does the dispute "pertain to the implementation or execution" of the debtor's reorganization plan? U.S. Brass Corp. v. Travelers Ins. Grp. (In re U.S. Brass Corp.), 301 F.3d 296, 304 (5th Cir. 2002) (quoting Craig's Stores, 266 F.3d at 391)."  Therefore, post-confirmation jurisdiction is proper only where the dispute pertains

-23-

to the plan's implementation or execution. The Fifth Circuit further stated, "[t]o fall within our post-confirmation jurisdiction, a dispute typically must implicate a specific plan's provision or the parties' bankruptcy-law rights or responsibilities. Moreover, we have often found jurisdiction only after observing that the parties' post-confirmation dispute "principally dealt with [pre]-confirmation relations between the parties," thus satisfying the first factor from Craig's Stores, 266 F.3d at 391. E.g., Galaz, 841 F.3d at 322; Enron, 535 F.3d at 335-36. Id. ay 538-539.

The Second Circuit in Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail. Inc.), 304 F. 3d 223 (2d Cir. 2002) adopted a "significant connection" standard for post-confirmation jurisdiction before the Third Circuit's close nexus test. A bankruptcy court in Penthouse Media Grp. v. Guccione (In re Gen. Media, Inc.) (In re Gen. Media, Inc.), 335 B.R. 66, 73-74 (Bankr. S.D.N.Y. 2005), applying the Second Circuit's approach determined that two prerequisites must be satisfied for there to be post-confirmation jurisdiction; namely: (i) the matter must satisfy the close nexus test; and (ii) "the plan must provide for the retention of jurisdiction over the dispute." "Thus, while it appears that the Second Circuit has adopted the close nexus test endorsed by the Third and Ninth Circuit, the Second Circuit is applying an additional requirement that the chapter 11 confirmation plan preserves jurisdiction over the dispute." See also; Ace Am. Ins. Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.), 448 F. App'x 134, 137 (2d Cir. 2011); Netflix, Inc. v. Relativity Media, LLC (In re Relativity Fashion, LLC), 696 F. App'x 26, 29 (2d Cir. 2017).

The First Circuit Court of Appeals in Reynolds v. Boston Reg'l Med. Cntr. (In re Boston Reg'l Med. Cntr.), as part of its analysis of post-confirmation "related to" jurisdiction stated as follows:

"[o]n its face, section 1334 does not distinguish between pre-confirmation and post-confirmation jurisdiction. Nonetheless, courts sometimes have found a need to curtail the reach of related to jurisdiction in the post-confirmation context so that bankruptcy court jurisdiction does not continue indefinitely. See. e.g., In re Pegasus Gold Corp., 394 F. 3d 1189, 1193-1194 (9th Cir. 2005) (suggesting that post-confirmation bankruptcy court

-24-

jurisdiction is necessarily more limited than pre-confirmation jurisdiction); In re Resorts Int'l Inc., 372 F. 3d 154, 164-69 (3d Cir. 2004)."

In re Boston Reg'l Med. Cntr., 410 F. 3d 100, 106 (1st Cir. 2005).

As part of its analysis the First Circuit further stated:

The existence vel non of related to jurisdiction must be determined case-by-case. See Pegasus Gold, 394 F.3d at 1194 (recognizing that post-confirmation related to jurisdiction should be determined with "a certain flexibility"). The language of the jurisdictional statute, 28 U.S.C. § 1334, is protean, and what is "related to" a proceeding under title 11 in one context may be unrelated in another. With this in mind, we feel confident that there will be situations in which the fact that particular litigation arises after confirmation of a reorganization plan will defeat an attempted exercise of bankruptcy jurisdiction. See, e.g., Resorts Int'l, 372 F.3d at 166-68. We are equally confident, however, that there are other situations in which the fact that particular litigation arises after confirmation of a reorganization plan will not defeat an attempted exercise of bankruptcy jurisdiction.

In re Boston Reg'l Med. Cntr., 410 F. 3d at 107.

In In re Boston Reg'l Med. Cntr., the First Circuit affirmed the bankruptcy court's conclusion that it had "related to" jurisdiction, stating that, "[w]hether or not BRMC [Boston Regional Medical Center] prevails will directly affect the amount of the liquidating dividend paid to creditors. There is, therefore, a fairly close connection between the adversary proceeding and the administration of the bankruptcy estate. That seemingly would suffice to bring this case within the bankruptcy's court related to jurisdiction." Id. at 105. (citing In re Toledo, 170 F. 3d 1340, 1345-1346, (11th Cir. 1999)) (finding related to jurisdiction when the outcome of the suit would affect the amount of funds available to creditors). The First Circuit distinguished post-confirmation jurisdiction in chapter 11 liquidating plan from a chapter 11 reorganization plan explaining that there is much less reason to depart from "related to" jurisdiction because the purpose of a liquidating plan is to wind up the debtor's financial affairs, convert its assets to cash and pay creditors, not to unfairly advantage a reorganized debtor that has entered the marketplace. The First Circuit further explained that the reason courts have limited the scope of post-confirmation jurisdiction is because once confirmation has occurred, fewer proceedings are actually related to the underlying bankruptcy case. This reasoning is absent in the case of a

-25-

liquidating plan because the debtor exists solely for the purpose of executing the bankruptcy court's order and any litigation involving the debtor will be more directly related to a chapter 11 proceeding.

In Polar Molecular, the Chapter 11 trustee filed an adversary proceeding to recover estate funds for distribution to unsecured creditors pursuant to the confirmed plan based upon an incorrect calculation of gross margin. The Court denied in part the debtor's motion to dismiss, finding that, "Trustee states a cause of action to enforce the plan and that resolution of the issues raised by the Complaint will directly affect the amount of supplemental dividends to be distributed to unsecured creditors." In re Polar Molecular, 195 B.R. at 555-56. The Court further determined that, "the issues raised by the Complaint arise under §1142 of the Code and that they fall well within the jurisdictional grant of §1334 as a proceeding "arising under" title 11 and "arising in or related to" a case under title 11." Id. at 555-556. See also In re Wellesley Realty Assocs., LLC, 2015 Bankr. LEXIS 1620, *47 (distinguishing case from Polar Molecular because there will be no effect on the bankruptcy estate or distributions to creditors. Property of the estate vested in the reorganized debtor and all claims were settled or paid in full at the Effective Date. The Court determined that it lacked jurisdiction as to the adversary proceeding commenced by the Debtor against Town. The Court also noted that only the members of the reorganized debtor would benefit from any recovery). The Court in In re Polar Molecular, as part of its post-confirmation jurisdictional analysis, noted that a narrow view of post-confirmation jurisdiction would render meaningless the distinction between 11 U.S.C. §1112(b)(4)(M)[8] and (N) as causes for dismissal or conversion to chapter 7. In re Polar Molecular, 195 B.R. at 555, fn. 2.

***Application of post-confirmation jurisdictional principles***

CLI in the *Complaint* states that this Court has jurisdiction pursuant to 28 U.S.C. §§ 157(a), 1334(a) and 11 U.S.C. §105. It further states that, '[t]his is a core proceeding pursuant to

---

[8] 11 U.S.C. §1112(b)(4)(M), (N) provides in pertinent part: "For purposes of this subsection, the term 'cause' includes-

   (M) inability to effectuate substantial consummation of a confirmed plan;
   (N) material default by the debtor with respect to a confirmed plan."

-26-

28 U.S.C. §157(b). The list contained in 28 U.S.C. §157(b)(2) is non-exhaustive; and courts have made it clear that proceedings involving substantive bankruptcy rights and the integrity of the bankruptcy courts fall within this core jurisdiction.' Cano v. GMAC Mortg. Corp. (In re Cano), 410 B.R. 506, 545 (Bankr. S.D. Tex. 2009). The controversies presented in this case are core proceedings that arose in the main bankruptcy case; and it involves the execution of a ruling issued by this Court. Moreover, it involves dealings and transactions between the Plan Administrator and their respective insiders." (dkt #1, pp. 1-2). CLI contends that this Court has subject matter jurisdiction over the controversy presented in the instant Complaint because of the close nexus between the post confirmation matters addressed by the Court which affect the interpretation, implementation, consummation, execution or administration of the confirmed plan or incorporated litigation agreements. CLI's position is that in accordance with the confirmed amended plan, the Debtor cannot pay third parties or stockholders until 100% of the amounts owed to secured and unsecured creditors are paid. CLI cites Article XIII C of the confirmed amended plan as the basis for its argument that this includes Plaintiff's claims (dkt #1, p. 3, ¶10).

Article XIII, titled, "Provisions for Inclusion in the Charter of the Reorganized Debtor," of the confirmed amended plan, section C provides in pertinent part: "Debtor or the Reorganized Debtor's Board of Directors shall take such action as may be necessary to the end that Debtor's or the Reorganized Debtor's charter shall contain: C. [p]rovisions that Debtor or the Reorganized Debtor will not pay dividends to its shareholders, nor to any other shareholder, which may exist in the future, until creditors are paid in accordance with the Plan." (Lead case 02-02887, dkt #879, p. 75).

On June 18, 2022, CLI filed proof of claim #139-1 in the amount of $2,632,614.53 for construction contracts performed during May 28, 1990, through March 31, 2001, as an unsecured claim. Subsequently, on August 26, 2005, the Debtor filed On August 26, 2005, *Objections to Claims* in which it included Lord's claim as part of a spreadsheet in which it disclosed that the amount expected to be allowed was in the amount of $131,273 and the amount disallowed was $2,501,341 (Lead case 02-02887, dkt # 1119). On October 6, 2005, the Court granted the Debtor's

objections to the claims to which no opposition had been filed (Lead case 02-02887, dkt # 1210). On October 6, 2005, the Court confirmed the Debtor's Chapter 11 Plan of Reorganization (Docket No. 879), which was supplemented on February 17, 2005 (Docket No. 1017), and further amended on September 30, 2005 (Docket No. 1209). The Debtor also filed a Supplement to First Amended Disclosure Statement amending Exhibit C which is a list of the proof of claims filed against Debtor, in particular the amount expected to be allowed for CLI's claim was amended to $157,509.15 (Docket No. 1016). As part of its Plan of Reorganization, the Debtor filed its Proof of Claims Reconciliation (Lead case 02-02887, dkt # 879, Exhibit C) in which it listed CLI's claim in the amount of $2,632,615 and the expected amount to be allowed of $131,273. Therefore, CLI was an unsecured creditor with an allowed claim of $131,273 which was later amended through the confirmed amended plan to the amount of $157,509.15.

As discussed extensively in this Court's April 8, 2019, *Opinion and Order*, CLI's claim is a pass-through claim. (Lead case 02-02887, dkt #2652, pp. 28-34). A pass-through claim allows for a contractor (Redondo) to pursue the subcontractor's claims against the owner (PRHTA). However, for a pass-through claim to exist there must be an agreement between the contractor and the subcontractor such as a liquidating agreement. After an extensive analysis regarding the nature of CLI's claim and whether the Liquidating Agreement was an executory contract, the Court concluded that:

> "[f]or the reasons explained above, this court finds that the Liquidating Agreement is not an executory contract pursuant to section 365(a), it is a "conditional payment arrangement" regarding the subcontractor's already existing pass-through claim. This "conditional payment arrangement" was executed between the contractor and the subcontractor which was entered into primarily because of the subcontractor's lack of privity with the owner or in this case, the PRHTA. Lord's pass-through claim is a conditional claim, whose payment was conditioned on the outcome of the subsequent bankruptcy estate's cause of action regarding the PR-2 Mayaguez Project, which was litigated in adversary proceeding 03-00194. The monies from the pass-through claims (Lord and Remodelco), if the Plaintiff/Debtor was successful in the litigation of this particular adversary proceeding, would be collected eventually from PRHTA's funds, not from Redondo and what later became the Debtor's bankruptcy estate (the original liquidating agreement was first executed on August 15, 1994 and subsequently amended on March 2001).

The Debtor was aware of the nature of Lord's pass-through claim. The Debtor on February 17, 2005 (Docket No. 1017) filed its Supplement to First Amended Plan of Reorganization in which it specifically disclosed that one of the amendments was to Item No. 3 which is the Estate's Claims and Causes of Actions (Exhibit B) of the Schedule of Plan Documents annexed to the Plan. The amendment to Exhibit B consisted of 2 footnotes, footnote 1 being the subject of this convoluted controversy. This court finds that the supplement to the First Amended Plan of Reorganization which resulted in the inclusion of "footnote 1" to the Estate's Claims and Causes of Actions is a binding provision of a confirmed plan and the parties involved have for over a decade, since before the date the plan was confirmed on October 6, 2005, consistently treated this claim as a pass-through claim in conformity with the purpose of a Liquidation Agreement and the ensuing litigation, as explained above." (Lead case 02-02887, dkt #2652, pp. 33-34).

CLI's pass-through claim was incorporated in a footnote as part of the Bankruptcy Estate's Claims and Causes of Actions and was litigated as such in adversary proceeding 03-00194. However, collection of CLI's pass-through claim was specifically conditioned to the outcome of the adversary proceeding against the PRHTA, unlike the other allowed unsecured claims that would receive distributions on a pro rata basis based upon the entirety of the funds received from the bankruptcy estate's claims and causes of actions in which the Debtor prevailed. CLI's pass-through claim was not included in any of the classes under section 4.8 of Article IV, "*Treatment of Claims and Equity Interests*" of the amended plan (Lead case, dkt #879, pp. 51-52).

CLI's pass-through claim is a conditional claim and as such is not a general unsecured claim belonging to class 8 of the amended plan[9] (section 4.8 of Article IV) and was not included as a Litigation Trust Beneficiary receiving distributions from the Litigation Trust according to

---

[9] "4.8 Class 8- General Unsecured Claims. (b) Distribution. Holders of Allowed General Unsecured Claims shall receive their Pro Rata share of the funds available for distribution from the Litigation Trust as provided in Section 5.6 below, provided that under no circumstances shall the holders of Allowed General Unsecured Claims against Debtor receive in excess of 100% of the amount of such holders' Allowed General Unsecured Claims. Any such excess recoveries shall revest in Debtor or the Reorganized Debtor. Class 8 claims will be paid within two (2) years from the Effective Date." (Lead case 02-02887, dkt #879, p. 51).

section 5.6[10] of the Plan. According to Section 5.6 and 5.10[11] of Article V of the amended plan, titled, *"Means for Execution of the Plan*," CLI's pass-through claim was not incorporated or afforded a particular distribution treatment in the amended plan of reorganization. Moreover, CLI's pass-through claim was not included as part of the defined term, "Litigation Trust Beneficiaries" defined as, "…the holders of Allowed Priority Tax Claims, Allowed General Unsecured Claims against the Debtor, and of allowed Priority Claims and Convenience claims not paid by Debtor or the Reorganized Debtor." (Lead case 02-02887, dkt #879, p. 43).

Article XI of the confirmed amended plan of reorganization, titled, "*Retention of Jurisdiction*", provides in pertinent part: [a]fter the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to the

---

[10] The Court notes that section 4.8 references section 5.6, but the correct section is 5.5 which is titled, "*Litigation Trust Distributions*." Section 5.6 of the amended plan is titled, "Timing of Distributions." Section 5.6 provides: "Distributions from the Litigation Trust shall be made by the Administrator with the concurrence of a majority of the Litigation Trust Board of Supervisors from any available funds and from funds originating from the Estate's Claims and Causes of Actions, first to any pending Administrative, Priority, except priority Tax Claims and Convenience Claims, then Pro Rata to holders against Debtor of Allowed Priority Tax Claims, until full payment thereof, and thereafter Pro Rata to the holders of Allowed General Unsecured Claims against Debtor, provided, however, that no such holder shall receive more than 100% of its Allowed Claim. The Administrator will also make payments from the Litigation Trust, with the concurrence of a majority of the Litigation Trust Board of Supervisors, from any available funds for fees and expenses of administering the Litigation Trust. Any excess amount shall revest in the Reorganized Debtor. Nothing contained in the Plan shall be construed as modifying Liberty's thirty five percent (35%) interest in the gross receipts of the claims in which Liberty was provided a security interest pursuant to the "Stipulation for Permanent Adequate Protection to Liberty Bond Service," approved by the Bankruptcy Court on June 23, 2003 (Docket Nos. 407 and 476), its distribution and the allocation of fees and expenses to the attorneys handling those claims, to be undertaken as addressed in the Stipulation with Liberty, which is not modified by the distribution order established herein; Seabord's twenty percent (20%) interest in the recovery of Debtor's legal claims as to which Seabord was given a security interest pursuant to the "Stipulation for Permanent Adequate Protection" (Docket No. 209), the distribution of the same, and the allocation of fees and expenses of the attorneys handling those claims, to be undertaken as addressed in the Stipulation with Seaboard, which is not modified by the distribution order established herein; and Traveler's ninety two percent (92%) and one hundred percent (100%) interest in the recovery of Debtor's claims as to which Travelers was given a security interest pursuant to the "Stipulation for Adequate Protection" (Docket No. 703)." (Lead case 02-02887, dkt #879, pp. 54-56).

[11] Section 5.10 of the amended plan, titled, "*Termination of the Litigation Trust*," provides: "[t]he Litigation Trust shall terminate on the earliest of (i) the date on which the holders of Allowed General Unsecured Claims against Debtor shall have received 100% of the amount of their Claims, or (ii) the date approved by the Litigation Trust Board of Supervisors, but no later than the third anniversary of the Effective Date; provided, however, that the term of the Litigation Trust may be extended by vote of the Litigation Trust Board of Supervisors for additional terms of one year each, such extended term not to exceed an aggregate of five years. Upon termination, all remaining assets of the Litigation Trust shall be distributed to the Litigation Trust Beneficiaries and in the event they have received 100% of the amount of their claims, to the Reorganized Debtor, and the Administrator and the members of the Litigation Trust Board of Supervisors shall have no further obligations to the holders of any Claims, regardless of whether the Allowed Amount of any Claim has been paid in full."(Lead case 02-02887, dkt #879, pp. 57-58).

Bankruptcy Case and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code:----
-(d) to determine any and all applications, motions, adversary proceedings and contested or litigated matters pending before the Bankruptcy Court on the Confirmation Date; (e) to determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, including but not limited to the Litigation Trust Agreement; (f) to enforce the provisions of the Plan subject to the terms thereof; (g) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, the Plan Documents or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan; (h) to determine such other matters as may be provided for in the Confirmation Order." (Lead case, 02-02887, dkt #879, pp. 68-69).

In the instant adversary proceeding, as the basis of jurisdiction CLI states that this court has jurisdiction pursuant to 28 U.S.C. §§1334(a) and 157(a), and further states that this is a core proceeding pursuant to 28 U.S.C. §157(b) because it involves substantive rights and the integrity of the bankruptcy court. CLI also contends that this court has subject matter jurisdiction pursuant to the close nexus test for determining post-confirmation "related to" jurisdiction. CLI's jurisdictional analysis is misplaced because it failed to provide whether the bankruptcy court's jurisdiction was "arising under," "arising in" or "related to." The jurisdictional statute for ensuring compliance with the provisions of a confirmed plan is 11 U.S.C. §1142(b).

The court after analyzing the relevant confirmed amended plan provisions as to the means for plan execution and distribution of the litigation trust funds and the treatment of claims finds that CLI's claim as to the alleged breach of the terms of the plan by Redondo is unsubstantiated. CLI's reliance in Article XIII C is misplaced because the Debtor paid its claimants pursuant to the plan provisions discussed above and that is what the wording of Article XIII C requires. Therefore, this court holds that it lacks subject matter post-confirmation jurisdiction as to the alleged breach of contract (amended confirmed plan) because as discussed above CLI's post-confirmation jurisdiction arguments are inapposite and thus, do not have any effect on the confirmed amended plan's meaning, implementation, execution, or administration. Moreover, at

this juncture, the amended confirmed plan has been substantially consummated (the payment to the pass-through claimants is not necessary to effectuate the plan), property of the estate has vested in the Reorganized Debtor pursuant to 11 U.S.C. §1141(b) and all allowed claims have been paid in full pursuant to the amended confirmed plan's provisions.

Lastly, CLI contends that this Court has subject matter jurisdiction regarding the breach of fiduciary duties premised upon breach of the terms of the confirmed amended plan premised upon the allegations that the Defendants paid related companies which held no claims to such funds with the proceeds of the adversary proceeding of the PR-52 Mayagüez project. The Court concludes that this argument has no basis in the confirmed amended plan because the plan did not provide for distribution of the pass-through claims. Therefore, there was no breach of the confirmed amended plan, and this Court has no subject matter jurisdiction over said claim. Notwithstanding, this holding does not exclude that CLI may have independent causes of action under state law against the Defendants and the Reorganized Debtor for breach of fiduciary duties. The distinction between debtor in possession and reorganized debtor might have a bearing in the argument as to breach of fiduciary duties. It is important to note that the Bankruptcy Code does not address fiduciary duties, but courts have held that debtors in possession and those who control the debtor in possession have fiduciary duties just as a Chapter 11 or 7 trustee would. See Commodity Future Trading Comm. v. Weintraub, 471 U.S. 343, 355 (1985); Wolf v. Weinstein, 372 U.S. 633, 649 (1963); In re Brook Valley IV, 347 B.R. 662, 672-673 (B.A.P. 8th Cir. 2006) ("'The United States Supreme Court has made clear that a debtor in possession, like a chapter 11 trustee, owes the estate and its creditors a general duty of loyalty. [I]n practice these fiduciary responsibilities fall not upon the inanimate corporation, but upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court.'" (internal citations omitted)), aff'd, In re Brook Valley VII, Joint Venture, 496 F. 3d 892 (8th Cir. 2007). The issue as to post-petition conduct of the officers and directors of the DIP is whether it falls under federal or state law. "Several bankruptcy courts have referred to this as a separate fiduciary duty imposed on a DIP and its directors, rather than fiduciary duties under state law. But the

source of such a separate duty is unclear. Some have pointed to 11 U.S.C. §1107(a), but that section merely states that a DIP 'shall perform all the functions and duties … of a trustee serving in a case under this chapter…" 'Duties,' of course, does not necessarily mean 'fiduciary duties,' and the source of the 'duties … of a trustee serving in a case under this chapter' is Section 1106(a) of the Bankruptcy Code which does not mention fiduciary duties." Russel C. Silberglied, *Litigating Fiduciary Duty Claims in Bankruptcy Court and Beyond: Theory and Practical Considerations in an Evolving Environment*, 10 J. Bus. & Tech. L. 181, 207-208 (2015).

Lastly, this Court concludes that given that it lacks post-confirmation jurisdiction it does not need to delve into the arguments in the motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief that is plausible on its face.

Conclusion

In view of the foregoing, this court finds that it lacks post-confirmation jurisdiction with respect to the adversary proceeding commenced by CLI against the Defendants. Therefore, defendant Redondo's *Motion to Dismiss* is granted and co-defendant Jorge Redondo's *Motion to Dismiss* is also granted.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of June 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge

-33-